IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARGARET WEICHERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 13-2493-KHV |
| E-FINANCE CALL CENTER SUPPORT, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Margaret Weichert brings suit against E-Finance Call Center Support, LLC and Encompass Consulting Group, LLC for race and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and race discrimination and retaliation in violation of 42 U.S.C. § 1981. From July 27 to 31, 2015, the Court conducted a jury trial which resulted in a verdict on some of plaintiff's claims. This matter comes before the Court on Defendants' Motion For Judgment As A Matter Of Law (Doc. #129) filed July 30, 2015 and Defendants' Renewed Motion For Judgment As A Matter Of Law At The End Of Plaintiff's Case And Motion For Judgment As A Matter Of Law At The Close Of All Evidence ("Defendants' Renewed Motion") (Doc. #134) filed August 3, 2015. For reasons stated below, the Court overrules both motions.

**I.    Background Information**

**A.    Plaintiff's Claims**

Plaintiff claims that in March of 2012, on account of race, PDL Support.com[1] paid her less

---

[1]    PDL Support.com is the predecessor to E-Finance Call Center Support, LLC and Encompass Consulting Group, LLC.

than Jessica Jones and that as a result of that pay discrimination, she suffered damages in the amount of $2,253.33 in lost wages from March of 2012 through April of 2013. Plaintiff also claims that on April 30, 2012, PDL Support.com terminated her employment on account of race and gender, and in retaliation for prior complaints of race and gender discrimination. Plaintiff claims that as a result of the wrongful termination, from May 1, 2012 through April 30, 2013, she suffered damages in the amount of $39,590.41 in back pay and $7,353.32 in lost benefits, i.e. a total of $46,943.73. Plaintiff also seeks punitive damages and actual damages for emotional distress.

### B.   Jury Verdict

After a five-day trial, the jury rendered a verdict on some of plaintiff's claims. Specifically, the jury found for plaintiff on her claims of pay discrimination on account of race and retaliatory discharge on account of prior complaints of race and gender discrimination. See Verdict (Doc. #136) filed July 31, 2015. The jury found in favor of defendants on plaintiff's claims of discriminatory discharge on account of race and gender. See id.

On plaintiff's pay discrimination claim, the jury awarded damages of $2,253.33 for lost wages and $5,000.00 for emotional distress. See id. In addition, the jury awarded punitive damages in the amount of $10,000.00. See Verdict (Doc. #136) filed July 31, 2015. For retaliatory discharge based on complaints of race and sex discrimination, the jury awarded $46,943.73 in back pay and lost benefits, $43,000.00 for emotional distress and $96,000.00 in punitive damages.[2] See id.

---

[2]   The jury awarded identical damages on both retaliation claims. See Verdict (Doc. #136). Following the jury verdict, the parties stipulated that the Court should construe the award as one recovery. See Partial Transcript Of Jury Trial Verdict Excerpt ("Partial Transcript") (Doc. #131) filed August 3, 2015 at 8:6-9:10. Subsequently, plaintiff sought relief from the stipulation and defendants moved for a mistrial. See Plaintiff's Motion For Relief From Stipulation And For Entry Of Judgment, With Supporting Suggestions (Doc. #139) filed August 10, 2015;
(continued...)

**II.     Legal Standards**

Under Rule 50(b), Fed. R. Civ. P., judgment as a matter of law "should be cautiously and sparingly granted." Zuchel v. City & Cnty. of Denver, 997 F.2d 730, 734 (10th Cir. 1993). Movants are entitled to judgment as a matter of law only if all of the evidence, viewed in the light most favorable to the nonmoving party, reveals no legally sufficient evidentiary basis to find for the nonmoving party. See Burrell v. Armijo, 603 F.3d 825, 832 (10th Cir. 2010). Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences to support the nonmoving party. See Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1241 (10th Cir. 1999); Riggs v. Scrivner, Inc., 927 F.2d 1146, 1149 (10th Cir. 1991). Such judgment is proper only when "the evidence so strongly supports an issue that reasonable minds could not differ." Ryder v. City of Topeka, 814 F.2d 1412, 1418 (10th Cir. 1987). In determining whether to grant judgment as a matter of law, the Court may not weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury. See Lucas v. Dover Corp., 857 F.2d 1397, 1400 (10th Cir. 1988). Nevertheless, the Court must find more than a mere scintilla of evidence favoring the nonmovant; the Court must find that "evidence was before the jury upon which it could properly find against the movant." Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1547 (10th Cir. 1988).

**III.    Analysis**

Defendants assert that plaintiff did not present evidence sufficient to support her claims of

---

[2](...continued)
defendants' oral motion for mistrial on July 31, 2015 (Doc. #149) (docketed March 17, 2016). On March 30, 2016, the Court overruled both motions. See Memorandum And Order (Doc. #154).

pay discrimination and retaliatory discharge.[3]

### A. Pay Discrimination

As noted, plaintiff claims that in March of 2012, on account of race, PDL Support.com paid her less than Jessica Jones. The jury found in favor of plaintiff and awarded damages in the amounts of $2,253.33 for lost wages, $5,000.00 for emotional distress and $10,000.00 in punitive damages.

Defendants assert that because plaintiff is white and asserts claims for reverse race discrimination, she must show either that (1) defendants are unusual employers who discriminate against the majority or (2) but for plaintiff's race, defendants would have paid her more. See Defendants' Renewed Motion (Doc. #134) at 2-3 (citing Notari v. Denver Water Dep't, 971 F.2d 585, 587-90 (10th Cir. 1992)). Defendants' argument mistakenly focuses on what plaintiff must show to establish a prima facie case of discrimination for purposes of summary judgment. See, e.g., Notari, 971 F.2d at 588-90. Once a case proceeds to trial, whether plaintiff can establish a prima facie case is irrelevant. See, e.g., Graff v. Henderson, No. 00-4205, 30 Fed. Appx. 809, 810 (10th Cir. Feb. 6, 2002) (citing Coleman v. B-G Maint. Mgmt. of Colo., Inc., 108 F.3d 1199, 1205 (10th Cir. 1997)). In other words, when a discrimination claim has been fully tried to a jury, the issue whether plaintiff established a prima facie case drops out and the Court considers only whether plaintiff proved her claim of discrimination at trial, i.e. that defendants treated her less favorably on the basis of race. See Torrez v. BEI Graphics Corp., No. 96-1436, 1998 WL 43159, at *2 (10th Cir. Jan. 27, 1998); Wirtz v. Kan. Farm Bureau Servs., Inc., 311 F. Supp.2d 1197, 1208 (D. Kan. 2004).

---

[3] Defendants also assert that plaintiff did not present evidence sufficient to support her claims of discriminatory termination based on race and/or gender. In light of the jury verdict in favor of defendants on these claims, the Court overrules as moot defendants' motions on these grounds.

At trial, plaintiff may prove illegal discrimination inferentially by showing that the proffered reason is a pretext for discrimination and/or directly by offering direct evidence of discrimination. See Randle v. City of Aurora, 69 F.3d 441, 453 (10th Cir. 1995). With regard to the pay discrimination claim, the Court instructed the jury as follows:

> To establish that PDL Support.com discriminated on the basis of race by paying plaintiff less than it paid Jessica Jones, plaintiff must prove that each of the following elements is more probably true than not true:
>
> 1. Plaintiff occupied a position which required substantially equal skill, effort and responsibility as that of Ms. Jones;
> 2. Plaintiff and Ms. Jones performed their positions under similar working conditions;
> 3. PDL Support.com paid plaintiff less than Ms. Jones; and
> 4. Plaintiff's race was a motivating factor in its decision to do so.
>
> As to the fourth element, plaintiff is not required to prove that race was the sole, exclusive or principal factor for the decision of PDL Support.com to pay her less than it paid Ms. Jones. Plaintiff must prove that race was a motivating factor, even if other factors also motivated the decision. "Motivating factor" means a consideration that moved PDL Support.com toward its decision. You may but are not required to find that race was a motivating factor in the pay decision if plaintiff has shown by a preponderance of the evidence that defendant's stated reasons for the decision are not the true reasons.
>
> If you find that plaintiff has proven all four elements, you must return a verdict in favor of plaintiff on this claim. If you find that plaintiff has not proved any of the foregoing four elements, you must return a verdict in favor of defendants on this claim.
>
> If you find that plaintiff has proven all four elements of this claim, you must decide whether defendants have shown by a preponderance of the evidence that PDL Support.com would have paid plaintiff less than Ms. Jones even if it had not taken race into account. If you find that plaintiff would have been paid less for reasons other than race, you must make that finding in your verdict.

Jury Instruction No. 11 (Doc. #132) filed July 31, 2015.

Defendants assert that plaintiff did not show that she was similarly situated to Jones. See

5

Defendants' Renewed Motion (Doc. #134) at 3.  The record, however, contains ample evidence to support a finding that plaintiff and Jones occupied positions which required substantially equal skill, effort and responsibility, and that they performed their positions under similar working conditions. In fact, Jones testified that in April of 2012, she worked as new business lead; that plaintiff worked as a lead in a similar position; and that they both worked under the same business manager, Tramaine Smith.  On this record, the jury could easily conclude that plaintiff and Jones were similarly situated.

Defendants assert that they paid Jones more because unlike plaintiff, Jones did not have a negative Individual Development Plan ("IDP"), was not under a final written warning, performed better under key metrics and was pursuing a college education at the time of the raise.  See Defendants' Renewed Motion (Doc. #134) at 4.  Construed in the light most favorable to plaintiff, however, the evidence supports an inference that plaintiff had more managerial experience and better performance results than Jones.  The record also supports an inference that due to racial favoritism, defendants disciplined plaintiff more harshly than black employees.  For instance, in November of 2011, plaintiff received a written warning for violating the company's sexual and other harassment policies.  Plaintiff's testimony and the video shown at trial, however, suggests that the conduct in question (touching) was innocent and did not warrant discipline, especially in light of evidence that Tramaine Smith regularly touched female employees in ways that they found offensive but that he received no discipline when they complained.  On February 15, 2011, plaintiff received a final written warning because she spoke in an intimidating manner to Janiece Williams.  Yet the jury also heard evidence that Tramaine Smith often spoke to employees in an intimidating manner but received no discipline when they complained.  On this record, the jury could conclude that

6

defendants' proffered reason for the pay disparity was pretextual. Defendants are not entitled to judgment as a matter of law on this claim.

### B.     Retaliatory Discharge

Plaintiff claims that on April 30, 2012, PDL Support.com terminated her employment in retaliation for prior complaints of race discrimination and/or gender discrimination. The jury found in favor of plaintiff on both claims and awarded damages in the amounts of $46,943.73 for back pay and lost benefits, $43,000.00 for emotional distress and $96,000.00 in punitive damages.

To prevail on her retaliation claims, plaintiff must show that (1) she complained to PDL Support.com that she was being discriminated against on the basis of race and gender; (2) she reasonably believed that she was being discriminated against on the basis of race and/or gender; and (3) PDL Support.com terminated her employment because she complained that she was being discriminated against on the basis of race and/or gender and would not have done so if she had not complained and everything else had been the same. See Zisumbo v. Ogden Reg. Med. Ctr., 801 F.3d 1185, 1199 (10th Cir. 2015); Jury Instruction Nos. 13, 15 (Doc. #132).

Defendants assert that plaintiff did not present evidence sufficient to support the first element of her claims, i.e. that she complained of race and gender discrimination. See Defendants' Renewed Motion (Doc. #134) at 7. The record suggests otherwise. Plaintiff testified that before March 30, 2012, she complained to Naomi Davis in human resources that Tramaine Smith treated employees differently based on race and sex. Davis corroborated plaintiff's testimony. Specifically, Davis testified that in mid-February of 2012, plaintiff came to her with complaints of discrimination. Defendants tried to assert that plaintiff complained generally of "discrimination," but did not complain of conduct which Title VII prohibits. Based on evidence presented at trial, however, the

7

jury could easily conclude that plaintiff complained of discrimination based on race and sex.[4]

Defendants also assert that plaintiff did not show that she reasonably believed that she was a victim of race and/or gender discrimination. See Defendants' Renewed Motion (Doc. #134) at 7-9. Construed in the light most favorable to plaintiff, however, the record easily supports her claim. Plaintiff and her co-worker, Ian Mueller, testified that plaintiff genuinely believed that her supervisors (Selena Smith and/or Tramaine Smith) treated her less favorably due to race and gender. The jury could readily believe their testimony.

Defendants assert that plaintiff did not show that their legitimate, nondiscriminatory reason for termination was pretextual. See Defendants' Renewed Motion (Doc. #134) at 9. Specifically, defendants assert that plaintiff did not show that "they did not have a good faith belief that she engaged in the behaviors that led to her termination." Id. As a preliminary matter, the record is unclear as to exactly which "behaviors" led to plaintiff's termination. At trial, defendants' HR Director, Jenny McElhany, testified that she decided to fire plaintiff because "she was a very toxic and negative employee and she wasn't making any improvements and I didn't think she was going to."[5] McElhany also testified that in response to plaintiff's claim for unemployment compensation, defendants stated that Selena Smith discharged plaintiff due to job performance. The form asked whether plaintiff was discharged for violation of company policy. Defendants answered "no." McElhany also testified that in response to interrogatories in this lawsuit, defendants stated that

---

[4] In fact, defendants' HR Director, Jenny McElhany, testified that in the events leading to plaintiff's termination, she was "of course" concerned that the termination might appear to be retaliatory and that her boss, Josh Mitchem, was "freaking out" about the possibility of reverse discrimination.

[5] The Court does not have an official transcript from trial and quotes witness statements based on an unofficial transcript and to the best of its recollection.

plaintiff was fired for poor work performance and failure to comply with company policies.[6]

Defendants contend that they reasonably believed that plaintiff made false complaints about Tramaine Smith and encouraged other employees to do the same. Construed in the light most favorable to plaintiff, the evidence suggests that (1) the complaints were not false; (2) plaintiff had a good faith basis for making them; (3) plaintiff followed company policy in encouraging other employees to complain; and (4) defendants fired plaintiff because of the complaints. On this record, defendants are not entitled to judgment as a matter of law.

**IT THEREFORE ORDERED** that Defendants' Motion For Judgment As A Matter Of Law (Doc. #129) filed July 30, 2015 and Defendants' Renewed Motion For Judgment As A Matter Of Law At The End Of Plaintiff's Case And Motion For Judgment As A Matter Of Law At The Close Of All Evidence (Doc. #134) filed August 3, 2015 be and hereby are **OVERRULED**.

Dated this 30th day of March, 2016 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[6] As a general matter, based on McElhany's demeanor and testimony at trial, the jury could have easily concluded that she was less than credible. For instance, McElhany testified that in the events leading up to plaintiff's termination, she was "of course" concerned that the termination might appear to be retaliatory. Yet she also said that she "could not remember" whether she expressed those concerns to anyone else involved in the termination decision, including Selena Smith (whom McElhany said initiated the idea of termination) and Josh Mitchem (McElhany's boss, who had veto power over the decision). Plaintiff's counsel inquired whether Mitchem expressed concerns that firing plaintiff could be construed as reverse discrimination. McElhany replied that since she did not recall if she had a conversation with him about that topic, she did not remember if he expressed that sentiment. Counsel then refreshed her recollection with an email (Exhibit 100). After reading the email, McElhany remembered that Mitchem was concerned about reverse discrimination and that it was her perception that he "was freaking out about it." This exchange between counsel and McElhany is one of many in which the jury could have discounted McElhany's credibility.

9