IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MARGARET WEICHERT,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**E-FINANCE CALL CENTER SUPPORT, et al.,** )<br>)<br>**Defendants.** )<br>_____) | CIVIL ACTION<br><br>No. 13-2493-KHV |

## MEMORANDUM AND ORDER

Margaret Weichert brings suit against E-Finance Call Center Support, LLC and Encompass Consulting Group, LLC for race and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and race discrimination and retaliation in violation of 42 U.S.C. § 1981. From July 27 to 31, 2015, the Court conducted a jury trial which resulted in a verdict in favor of plaintiff on some claims.[1] This matter comes before the Court on Defendants' Motion For A New Trial Or In The Alternative Motion To Amend The Judgment And Remittitur Of The Punitive Damage Award And Memorandum In Support Of Motion (Doc. #159) filed April 27, 2016. For reasons stated below, the Court overrules defendant's motion.

---

[1] Specifically, the Court entered judgment in the following amounts:

for discriminatory pay, $2,253.33 in lost wages, $5,000.00 for emotional distress and $10,000.00 in punitive damages; for retaliatory discharge, $46,943.73 in back pay and lost benefits, $43,000.00 for emotional distress and $96,000.00 in punitive damages; with interest thereon at the rate of 0.64% as provided by law, and her costs of action.

Judgment In A Civil Case (Doc. #155) filed March 30, 2016. Subsequently, the parties stipulated to a statutory attorney fee award of $220,000.00 and costs in the amount of $12,806.30. See Joint Stipulation As To An Award Of Statutory Attorney Fees (Doc. #157) filed April 12, 2016.


## I.     Background Information

### A.     Plaintiff's Claims

Plaintiff claims that in March of 2012, on account of race, PDL Support.com[2] paid her less than Jessica Jones and that she therefore suffered damages in the amount of $2,253.33 in lost wages from March of 2012 through April of 2013.  Plaintiff also claims that on April 30, 2012, PDL Support.com terminated her employment on account of race and gender and in retaliation for prior complaints of race and gender discrimination.  Plaintiff claims that as a result of wrongful termination, she suffered damages in the amount of $39,590.41 in back pay from May 1, 2012 through April 30, 2013, and $7,353.32 in lost benefits, i.e. a total of $46,943.73.  Plaintiff also seeks punitive damages and actual damages for emotional distress.

### B.     Jury Verdict

After a five-day trial, the jury rendered a verdict in favor of plaintiff on some claims. Specifically, the jury found for plaintiff on claims of (1) pay discrimination on account of race and (2) retaliatory discharge on account of prior complaints of race and gender discrimination. See Verdict (Doc. #136) filed July 31, 2015 at 1-2, 4, 6.  The jury found in favor of defendants on plaintiff's claims of discriminatory discharge on account of race and gender. See id. at 3, 5.

On plaintiff's pay discrimination claim, the jury awarded damages of $2,253.33 for lost wages and $5,000.00 for emotional distress.  See id. at 2.  In addition, the jury awarded punitive damages in the amount of $10,000.00.  See id.

For retaliatory discharge based on complaints of race discrimination, the jury awarded

---

[2]     PDL Support.com is the predecessor to E-Finance Call Center Support, LLC and Encompass Consulting Group, LLC.

$46,943.73 in back pay and lost benefits, $43,000.00 for emotional distress and $96,000.00 in punitive damages. See id. at 4.

For retaliatory discharge based on complaints of gender discrimination, the jury awarded $46,943.73 for back pay and lost benefits, $43,000.00 for emotional distress and $96,000.00 in punitive damages. See id. at 6.

### C. Plaintiff's Stipulation And Other Discussions After Jury Verdict

Before announcing the jury verdict, the Court reviewed it and noticed that the jury had awarded the exact same damages on each retaliation claim. This was potentially problematic because the same evidence supported each claim of retaliation and plaintiff had not presented evidence which would support two back pay/lost benefit awards of $46,943.73 each. The Court therefore asked the jury foreperson whether the jury intended for plaintiff to recover separate amounts on each claim.[3] See Partial Transcript Of Jury Trial Verdict Excerpt ("Partial Transcript") (Doc. #131) filed August 3, 2015 at 3:12-17. The foreperson (Juror No. 100605963) responded in the affirmative. Id. at 3:16-18. After the courtroom deputy read the verdict in open court, the Court asked counsel for a sidebar conference. See id. at 3-7. At sidebar, the Court noted that on the retaliation claims, the jury had awarded double damages for back pay and lost benefits in the exact same amount and that it could not tell whether the jury had done the same thing for emotional distress damages. Id. at 7:18-22. The Court proposed to return the verdict and instruct the jury to continue deliberations with further instructions regarding double recovery. See id. at 7:18-8:5.

---

[3] The Tenth Circuit has approved the practice of questioning a foreperson regarding the jury's intent to aggregate damages. See, e.g., RTC v. Stone, 998 F.2d 1534, 1547-48 (10th Cir. 1993) (permissible to question foreman regarding jury intent to aggregate damages; practice promotes judicial economy and may avoid need for new trial).

Plaintiff's counsel disagreed, and proposed to stipulate that the verdict on the retaliation claims should be construed as awarding one recovery. Specifically, counsel stated as follows:

> Your Honor, given that they're identical on the wrongful discharge claim, maybe I should be more aggressive on this, but I believe there's one recovery. It was the same discharge. I don't believe that the back pay or the emotional distress or the punitive damages would be subject to double recovery.

Id. at 8:6-12.

The Court clarified plaintiff's intent as follows:

> THE COURT: So do you stipulate that the total amount –
> MR. SCHUMAKER: Yes.
> THE COURT: And this would be consistent with your position on the instructions from the beginning that the retaliation claim was only one claim. So you would stipulate that the total recovery for retaliation under both theories would be $46,943.73 . . . for back pay and lost benefits and $43,000 for emotional distress and $96,000 for punitives?
> MR. SCHUMAKER: It pains me to say yes.
> THE COURT: Okay.
> MR. SCHUMAKER: I mean, I think there's one recovery. Clearly there's only one back pay award.

Id. at 8:13-9:3. Defendants agreed that the jury intended to award one recovery on the retaliation claims. See id. at 9:5-10. The Court responded that it could not tell what the jury intended but that based on plaintiff's stipulation, it would tell the jury that it would enter the judgment as a single damage recovery on the retaliation claims. Id. at 9:11-13.

Following that sidebar, the foreperson asked to speak in open court and stated that the jury intended to award the amount for loss of pay, i.e. $46,943.73, only once and not twice. Id. at 10:22-11:15. The juror stated that he or she understood the Court's previous question to be with respect to punitive damages. See id. The Court informed the jury that the parties had stipulated to one set of damages so plaintiff would not recover twice for punitives or emotional distress. See id.

Before discharging the jury, the Court began to give final instructions. Id. at 11:16-12:12.

4

Plaintiff's counsel requested another sidebar and asked the Court to clarify the record regarding the jury's intent so that the parties could address the issue in post trial motions. Id. at 12:13-14, 13:7-9. Counsel stated that perhaps his stipulation was premature because it was based on an inaccurate assumption that the jury viewed the retaliation claims as one claim and therefore awarded identical damages on both. Id. at 14:4-7, 14:25-15:5. Counsel requested that the Court ask the jury to clarify – either in open court or in a special verdict – whether it intended to award separate punitive damages on the retaliation claims.[4] Id. at 14:14-17, 15:8-11. Defense counsel objected that it would be improper to conduct a voir dire in open court. Id. at 15:19-21.

The sidebar ended, and the Court resumed its closing remarks to the jury. At that point, another juror (Juror No. 10060443) asked to speak, as follows:

> Your Honor, I would just like to say for the record that the punitive damages and the emotional damages, we came to a total damage for all, you know, and we divided that by two on the two counts where we found retaliation. And I do not feel that the way this is being discussed is a reflection of the jury's decision. The form certainly, as I understood it, or as I believe the jury understood it, was not that there would be one – you put down one damage and it would apply for everything. So I do not feel that reflects what happened in the jury room or our decision or certainly my decision. And I certainly was not polled in this room – in the courtroom what my decision was. So I feel, in the interest of justice, I have to tell you what I believe to be true.

Id. at 18:17-19:7.

The Court responded that it had not yet polled the jury and that under the circumstances, it would give the jury a clean verdict form to fill out. Id. at 19:8-11. Defendants objected on grounds that juror comments and suggestions by the Court regarding plaintiff's stipulation had tainted the process. Id. at 19:16-22. Counsel then approached for another sidebar discussion. Defense counsel

---

    [4] Plaintiff's counsel stated that for back pay and emotional distress, he did not believe that the jury could award separate damages for the separate claims. Id. at 16:2-4.

moved for a mistrial on grounds that under the circumstances, it would be improper for the Court to submit a new verdict to jury. Id. at 20:16-23:18, 26:1-19,28:11-29:4. Over defendants' objection, the Court submitted a special verdict form which asked the jury to determine one set of damages for both retaliation claims, rather than for each retaliation claim.

### D. Special Verdict

On the special verdict form, the jury awarded the following damages for retaliatory discharge based on complaints of race and/or gender: $46,943.73 for back pay and lost benefits, $86,000.00 for emotional distress and $192,000.00 for punitive damages.[5] See Special Verdict (Doc. #137) filed July 31, 2015 at 1-2. The Court then polled and released the jury. See Partial Transcript at 32:20-34:7. After further discussions with counsel, the Court ordered the parties to file written submissions regarding plaintiff's motion for relief from counsel's stipulation regarding the initial jury verdict and defendants' motions for mistrial and/or judgment as a matter of law. See Order (Doc. #138) filed August 5, 2015.

### E. Post Trial Rulings

As noted, after seeing the initial jury verdict at trial, plaintiff stipulated that the Court should construe it as awarding unitary damages on the retaliation claims, i.e. $46,943.73 for back pay and lost benefits, $43,000.00 for emotional distress and $96,000.00 for punitive damages. Plaintiff later asked the Court to relieve her from the stipulation and enter judgment based on the special verdict,

---

[5] As noted, for lost pay and benefits, the jury originally awarded $46,943.73 for *each* retaliation claim. On the special verdict, the jury awarded the identical amount, i.e. $46,943.73, for *both* claims.

For emotional distress and punitive damages, the jury originally awarded $43,000.00 and $96,000.00, respectively, for each retaliation claim. On the special verdict, the jury doubled the amounts and awarded $86,000.00 and $192,000.00, respectively, for both claims.

i.e. $46,943.73 for back pay and lost benefits, $86,000.00 for emotional distress and $192,000.00 for punitive damages. See Plaintiff's Motion For Relief From Stipulation And For Entry Of Judgment, With Supporting Suggestions (Doc. #139) filed August 10, 2015. The Court declined to do so. See Memorandum And Order (Doc. #154) filed March 30, 2016. The Court found that in deciding to stipulate to unitary damages, counsel had made an extremely reasonable trial decision. See id. 11-12. In particular, the Court noted that plaintiff's stipulation reflected the only way to read the verdict consistently without awarding double damages.[6] See id. By entering into the stipulation, counsel avoided the need for the Court to attempt to reconcile the verdict and/or send the matter back for further jury deliberation, and any uncertainties that those actions might bring. See id. The Court concluded that plaintiff presented no facts or circumstances which suggested that it would be manifestly unjust to enforce the stipulation. See id. at 12-13.

Defendants moved for a mistrial on grounds that (1) in the initial verdict, the jury failed to follow the Court's instructions and (2) events which unfolded in the courtroom following plaintiff's stipulation, i.e. court comments to the jury and unsolicited juror remarks, tainted the special verdict.

---

[6] Regardless of the reason behind it, the termination of plaintiff's employment constituted one act for which plaintiff could recover only once for lost wages, lost benefits and emotional distress. See, e.g., Medina v. District of Columbia, 643 F.3d 323, 327 (10th Cir. 2011); Black v. Pan Am. Labs., LLC, 646 F.3d 254, 261 (5th Cir. 2011). The evidence showed that plaintiff lost $46,943.73 in wages and benefits, i.e. the exact amount that the jury awarded twice on the retaliation claims. Clearly, plaintiff could only recover that amount once. See Medina, 643 F.3d at 327; Black, 646 F.3d at 261. For emotional distress, the jury also twice awarded the same amount ($43,000.00) on both claims. Under the circumstances, the only way to read the verdict consistently without awarding double damages is to construe the damage awards singularly, i.e. as compensating the same amounts for the same injury. As to whether plaintiff could recover separate amounts for punitive damages, the law is less clear. See, e.g., Mason v. Okla. Turnpike Auth., 115 F.3d 1442, 1459 (10th Cir. 1997) (in some cases, multiple punitive damage awards on overlapping theories of recovery may not be duplicative but may instead represent jury's proper effort to punish and deter all improper conduct underlying verdict), overruled on other grounds, TW Telecom Holdings Inc. v. Carolina Internet Ltd., 661 F.3d 495 (10th Cir. 2011).

7

See Defendants' Written Submissions In Support Of Defendants' Motion For A Mistrial (Doc. #140) filed August 10, 2015. The Court overruled the motion. See Memorandum And Order (Doc. #154) at 14-15. Specifically, the Court found that in light of its decision to enforce plaintiff's stipulation regarding the initial verdict, defendants had suffered no demonstrable prejudice. See id.

Defendants urged the Court to enter judgment as a matter of law on grounds that plaintiff did not present evidence sufficient to support her claims of pay discrimination and retaliation. See Defendants' Renewed Motion For Judgment As A Matter Of Law At The End Of Plaintiff's Case And Motion For Judgment As A Matter Of Law At The Close Of All Evidence (Doc. #134) filed August 3, 2015 at 2-4, 7-9. The Court rejected defendants' arguments. See Memorandum And Order (Doc. #156) filed March 30, 2016. As to pay discrimination, the Court found that the record contained ample evidence to support findings that (1) plaintiff and Jessica Jones occupied similar positions, (2) plaintiff had more managerial experience and better performance results than Jones and (3) due to racial favoritism, defendant disciplined plaintiff more harshly than black employees and paid her less because of race. Id. at 6. As to retaliatory discharge, the Court found that based on evidence presented at trial, the jury could easily conclude that (1) plaintiff complained of discrimination based on race and sex, (2) plaintiff reasonably believed that she was a victim of race and/or gender discrimination and (3) defendants' articulated reasons for termination were pretextual. Id. at 7-9. The Court noted that due to shifting explanations by defendants, the record was unclear as to exactly what behaviors led to plaintiff's termination. Id. at 8. Moreover, the Court found that based on the demeanor and inconsistent statements of defendants' HR Director, Jenny McElhany, the jury could have easily concluded that her testimony was not credible. Id. at 9 n.6.

8

## II.    Legal Standards

In deciding whether to grant a motion for new trial, the Court exercises broad discretion.[7] See Unit Drilling Co. v. Enron Oil & Gas Co., 108 F.3d 1186, 1194 (10th Cir. 1997). The Court generally regards motions for new trial with disfavor and grants them only with great caution.[8] See Franklin v. Thompson, 981 F.2d 1168, 1171 (10th Cir. 1992); Utility Trailer Sales of Kansas City, Inc. v. MAC Trailer Mfg., Inc., 734 F. Supp.2d 1210, 1216 (D. Kan. 2010). The party seeking to set aside a jury verdict must demonstrate prejudicial trial error or that the verdict is not based on substantial evidence. Anderson v. Phillips Petroleum Co., 861 F.2d 631, 637 (10th Cir. 1988), overruled on other grounds by Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993); White v. Conoco, Inc., 710 F.2d 1442, 1443 (10th Cir. 1983). Where a party seeks a new trial based on insufficient evidence, the verdict must stand unless it is clearly, decidedly or overwhelmingly against the weight of the evidence. See May v. Interstate Moving & Storage Co., 739 F.2d 521, 525 (10th Cir.1984). In reviewing a motion for new trial, the Court views the evidence in the light most favorable to the prevailing party. See Griffin v. Strong, 983 F.3d 1544, 1546 (10th Cir. 1993). The Court ignores errors that do not affect the essential fairness of the trial. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553 (1984).

The Court exercises discretion in deciding whether to grant remittitur based on an excessive

---

[7]    Pursuant to Rule 59, Fed. R. Civ. P., the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

[8]    The right to trial by jury is a fundamental principle of our legal system. See Jacob v. City of N.Y., 315 U.S. 752, 752-53 (1942) (right to jury trial in civil cases basic and fundamental feature of our legal system; courts should jealously guard right so fundamental and sacred to citizens).

damage award. Blanke v. Alexander, 152 F.3d 1224, 1236 (10th Cir. 1998). The Court considers the jury award inviolate so long as it is not so excessive or inadequate as to shock the judicial conscience and raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial. See Prager v. Campbell Cty. Mem'l Hosp., 731 F.3d 1046, 1062 (10th Cir. 2013); Capstick v. Allstate Ins. Co., 998 F.2d 810, 820 (10th Cir. 1993). Defendants bear the heavy burden of demonstrating that the verdict was "clearly, decidedly, or overwhelmingly against the weight of the evidence." Blanke, 152 F.3d at 1236 (citations and quotations omitted). In determining whether an award of punitive damages is excessive, the Court considers the following factors: (1) the nature of the act which caused the injury; (2) the economic status of defendant; and (3) the deterrent effect of the award on others. See Capstick, 998 at 820.

### III. Analysis

Defendants urge the Court to order a new trial or, alternatively, remit the punitive damages award. Although defendants' arguments are not extremely organized, in essence they assert that because the jury awarded double damages for back pay and lost benefits, the jury was either confused or abused its power and therefore a new trial or remittitur is warranted.

#### A. New Trial

Defendants acknowledge that the Court has already ruled that their assertions do not warrant a new trial. See Defendants' Motion (Doc. #159) at 4. As noted, the Court has enforced plaintiff's stipulation that the jury awarded unitary damages on the retaliation claims, i.e. $46,943.73 for back pay and lost benefits, $43,000.00 for emotional distress and $96,000.00 for punitive damages. See Memorandum And Order (Doc. #154) at 10-14. In light of this ruling, defendants have suffered no demonstrable prejudice as a result of inconsistencies in the initial verdict. See id. at 14-15.

Moreover, substantial evidence supports the jury findings. See Memorandum And Order (Doc. #156) at 6-9. On this record, defendants are not entitled to a new trial. See, e.g., Anderson, 861 F.2d at 637.

**B.     Remittitur**

As noted, pursuant to plaintiff's stipulation, the jury awarded punitive damages of $96,000.00 on the retaliatory discharge claims. Defendants urge the Court to remit the punitive damage award on plaintiff's retaliation claims.[9] Although defendants do not delineate their arguments as such, they apparently assert that remittitur is warranted because (1) the jury was confused and (2) the record contains insufficient evidence to support punitive damages.[10] Defendants do not specify whether the Court should reduce or eliminate the punitive damages award.

        1.     Jury Confusion

Defendants assert that because the jury awarded double back pay and lost benefits, "a question arises whether the jury fully read, understood, and followed the Court's instructions." Defendants' Motion (Doc. #159) at 4. Defendants assert that the "inconsistency and logical incapability of the jury's damage award indicates that the jury was either confused or abused its power." Id. Defendants urge the Court to "consider what effect the jury's confusion may have had

---

[9] Defendants apparently challenge only the punitive damage award on the retaliation claims and not the punitive damages award of $10,000.00 on the pay discrimination claim. See Defendants' Motion (Doc. #159) at 8 (no evidence to support punitive damages of $96,000.00).

[10] Defendants do not assert that amount of punitive damages awarded, i.e. $96,000.00, is excessive or unconstitutional. See, e.g., Hardeman v. City of Albuquerque, 377 F.3d 1106, 1121-22 (10th Cir. 2004) (explaining difference between constitutional and common law challenges to excessive punitive damage awards).

on their original and final singular punitive damage award." Id.

As an initial matter, the Court disagrees with defendants' contentions that the jury failed to follow the court's instructions. Regarding compensatory damages, the Court instructed the jury to award plaintiff "such amount of money as will fairly and reasonably compensate her for any damages which were proximately caused by defendants' unlawful conduct" and that the award "must be fair compensation – no more and no less." Instructions To The Jury (Doc. #132) filed July 31, 2015 at 22 (Instruction No. 18). The initial verdict form provided separate places for the jury to award damages on each retaliation claim. See Verdict (Doc. #136) at 4, 6. Neither party objected to the verdict form.[11] The jury instructions did not address double recovery or how the jury should calculate or award compensatory damages if it found on favor of plaintiff on both retaliation claims.[12] On each retaliation claim, the jury awarded identical damages. Pursuant to plaintiff's stipulation, the Court construed the verdict as awarding unitary damages on the retaliation claims. See Memorandum And Order (Doc. #154) at 10-14. Defendants assert that events which happened after plaintiff's stipulation, i.e. juror comments and the special verdict, demonstrate that the jury was confused when it entered the initial verdict. Any confusion, however, was limited to how to award damages for the separate retaliatory discharge claims. To the extent any such confusion may have occurred, defendants have benefitted from plaintiff's stipulation and the Court's decision to interpret

---

[11] In fact, both parties proposed verdict forms which allowed the jury to assess damages separately for race and gender retaliation. See Defendant's [sic] Proposed Jury Instructions (Doc. #97) filed July 20, 2015 at 34-37 (proposed verdict forms C and D); Plaintiff's Proposed Jury Instructions (Doc. #95) filed July 20, 2015 at 14, 20 (proposed verdict forms B and C).

[12] Neither party requested such an instruction or objected to the Court's instructions in this regard.

12

the verdict as awarding unitary damages on the retaliation claims.[13] Under these circumstances, defendants have not shown that any jury confusion resulted in a verdict which is so excessive or inadequate as to shock the judicial conscience and raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial.

Defendants assert that because the jury failed to follow the Court's instructions regarding compensatory damages, "a meaningful question" exists as to "whether the jury likewise failed to follow the Court's instructions when it determined the amount of Defendants' liability for punitive damages." Defendants' Motion (Doc. #159) at 5 n.3. As noted, the record does not support an inference that the jury failed to follow the Court's instructions. Defendants are not entitled to remittitur on this ground.

Defendants assert that because the jury awarded double damages, it might have believed that defendants committed two separate acts of retaliation and that if the jury understood that defendants had committed only one illegal act, it might have awarded a far smaller amount of punitive damages or perhaps no punitive damages at all. Defendants' Motion (Doc. #159) at 5-6. Defendants' speculation as to what the jury might have believed has no basis in the record and does not support remittitur.

    2.  Sufficient Evidence

Defendants assert that the evidence is insufficient to support the punitive damage award. Defendants assert that because the jury found in favor of defendants on plaintiff's race and

---

[13] In light of juror comments and the special verdict, it appears that had the Court initially instructed the jury to award unitary damages, it would have awarded $46,943.73 for back pay and lost benefits, $86,000.00 for emotional distress and $192,000.00 for punitive damages on the retaliation claims. See Special Verdict (Doc. #137) at 1-2.

13

gender discrimination claims, it must have believed that plaintiff's complaints of discrimination were either false or mistaken. Defendants' Motion (Doc. #159) at 6. Defendants postulate that it is "hard to imagine that the Defendants' behavior in response to these false or at best tenuous claims [of discrimination] was of a reprehensible nature warranting punitive damages." Id. at 6. Defendants' argument overlooks the fact that to prove unlawful retaliation, plaintiff need only show that she reasonably believed that she was being discriminated against on the basis of race or gender. See Instructions To The Jury (Doc. #132) at 17, 19 (Instructions 13 and 15). The Court has found that ample evidence supports such a finding.[14] See Memorandum And Order (Doc. #156) at 8. Moreover, the jury could easily find that PDL Support.com acted with malice or reckless indifference to plaintiff's right not to be retaliated against because she complained of discrimination.[15] See Instructions To The Jury (Doc. #132) at 25 (Instruction No. 20). Thus, sufficient evidence supports the punitive damage award.[16]

**IT THEREFORE ORDERED** that Defendants' Motion For A New Trial Or In The Alternative Motion To Amend The Judgment And Remittitur Of The Punitive Damage Award And

---

[14]   As to whether plaintiff reasonably believed that she was a victim of race and/or gender discrimination, the Court found that the record "easily" supported her claim. Memorandum And Order (Doc. #156) at 8. Specifically, the jury readily could have believed testimony by plaintiff and her co-worker, Ian Mueller, that plaintiff genuinely believed that her supervisors (Selena Smith and/or Tramaine Smith) treated her less favorably due to race and gender. Id.

[15]   Defendants' HR Director, Jenny McElhany, testified that in the events leading to plaintiff's termination, she was "of course" concerned that termination might appear to be retaliatory and that her boss, Josh Mitchem, was "freaking out" about the possibility of reverse discrimination.

[16]   Defendants make a two-sentence argument that they "renew" their objections to the verdict forms and Jury Instructions 17, 20 and 21 and "note for the record that if those instructions would have been given as requested by Defendants the outcome may be been different." Defendants' Motion (Doc. #159) at 8. As an initial matter, defendants did not object to the initial verdict form. As to jury instructions, defendants have not articulated any argument or analysis which shows that a new trial or remittitur is warranted.

<u>Memorandum In Support Of Motion</u> (Doc. #159) filed April 27, 2016 be and hereby is **OVERRULED**.

Dated this 23rd day of March, 2017 at Kansas City, Kansas.

<div style="text-align:right">

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

</div>